IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:12-CV-239-FL

| | |
|---|---|
| MARY W. WYCHE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Mary W. Wyche ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 28, 29). Each party filed a memorandum in support of its motion (D.E. 28-1, 30). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Minute Entry dated 2 July 2013). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## I. BACKGROUND

### A. Case History

Plaintiff filed applications for DIB and SSI on 24 February 2010, alleging a disability onset date of 15 February 2010. Transcript of Proceedings ("Tr.") 10. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 10. On 6 July 2011, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 23-47. In a written decision dated 25 August 2011, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 10-19. Plaintiff timely requested review by the Appeals Council. Tr. 6. On 13 August 2012, the Appeals Council denied the request for review. Tr. 1-3. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 12 October 2012, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI).[2] (*See In Forma Pauperis* Mot. (D.E. 1), Order Allowing Mot. (D.E. 5), Compl. (D.E. 6)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or

---

[2] Plaintiff previously filed applications for DIB and SSI on 25 August 2004 and 20 September 2006. Tr. 53, 105. These applications were ultimately denied, on 19 April 2008 and 18 October 2007, respectively. *See* Tr. 53-60 (initial ALJ decision denying 2004 applications), 66-77 (ALJ decision on remand denying 2004 applications), 105 (summary of proceedings on 2004 and 2006 applications); (Def.'s Mem. 1). Denial of these prior applications does not, of course, operate to bar approval of plaintiff's instant applications. *See Albright v. Comm'r of Social Security*, 174 F.3d 473, 476-77 (4th Cir. 1999). The ALJ does not discuss these prior denials in his decision, but he was not required to do so. *Taylor v. Colvin*, No. 3:12-CV-08626, 2013 WL 6243716, at *14 (S.D. W. Va. 3 Dec. 2013).

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

C.      **Findings of the ALJ**

Plaintiff was 45 years old on the alleged onset date of disability and 46 years old on the date of the administrative hearing. Tr. 17 ¶ 7. She has a limited education, testifying that she completed the ninth grade. Tr. 27 ¶ 8; 26. Her past work includes employment as a nurse's assistant, fast-food cook, and a convenience store cashier. Tr. 17 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 12 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: a depressive disorder, lumbar spine degenerative disc disease, diabetes mellitus, hypertension, and obesity. Tr. 12 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 13 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform light work with certain limitations. Tr. 14 ¶ 5. Light work involves lifting up to 20 pounds occasionally, lifting and carrying 10 pounds frequently, sitting for up to 6 hours during an 8–hour workday with normal

breaks, and standing or walking for up to 6 hours during an 8-hour workday with normal breaks. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); *Herbert v. Colvin*, No. 4:12-CV-141-D, 2013 WL 3776276, at *3 n.2 (E.D.N.C. 17 July 2013) (mag. judge's mem. & recommendation as adopted by order of district judge at same citation); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot.htm (last visited 16 Jan. 2014).[3] The specific limitations were that plaintiff could perform simple, routine, repetitive tasks ("SRRT's") in a low stress environment, but that she was capable of frequent contact with the public. Tr. 14 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff was not capable of performing her past relevant work. Tr. 17 ¶ 6. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of mail clerk, laundry folder, and motel cleaner. Tr. 18 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 18 ¶ 11.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See*

---

[3] "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

*Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ erred by (1) improperly determining her RFC; (2) improperly assessing her credibility; and (3) providing the VE an incomplete hypothetical. These contentions are addressed in turn below.

### C. ALJ's RFC Determination

The RFC to perform work at the light (or any other) exertional level includes the ability to work on a regular and continuing basis, that is, eight hours a day for five days a week or an equivalent work schedule. *See* Soc. Sec. R. 96-8p, 1996 WL 374184, at *2 (2 Jul. 1996). The ALJ's RFC determination therefore includes a determination that plaintiff could perform such work on a regular and continuing basis. There is no requirement that an ALJ discuss this aspect of a claimant's RFC expressly. *See id.* at *2, 7. Plaintiff contends that the RFC determination is erroneous because her depression, hypertension, and herniated cervical discs preclude her from working on a regular and continuing basis. The court disagrees.

#### 1. Plaintiff's Depression

Contrary to plaintiff's contention, substantial evidence supports the ALJ's determination that plaintiff's depression did not preclude her from working on a regular and continuing basis, and thereby performing work at the light exertional level. This evidence includes the findings of psychiatrist Ravinder Mamedi, M.D., who saw plaintiff on 17 May 2007 (Tr. 298), 17 September 2009 (Tr. 294-95), and 3 November 2009 (Tr. 296). The ALJ summarized Dr. Mamedi's evaluations of plaintiff in 2009 as follows:

> Even though Dr. Mamedi treated the claimant . . . for MDD [*i.e.*, major depressive disorder] on two occasions in 2009, Dr. Mamedi opined that the claimant's depression was only moderate in severity; which is not sufficient to support a finding of disability. In addition, despite the diagnosis, Dr. Mamedi observed that the claimant exhibited normal speech, goal-directed thought processes, fair insight/judgment and intact memory functions. These observations . . . evidenced that the claimant was able to function mentally and contradict the claimant's allegations of memory function issues. Furthermore, Dr. Mamedi did not detect any signs of flighty ideas, delusions, suicidal/homicidal ideations or perceptual disturbances; which indicated that the claimant was mentally stable. In November of 2009, Dr. Mamedi concluded that the claimant's GAF[4] score had increased

---

[4] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

from 55 to 60, which suggested that the claimant's mental condition was improved with treatment modalities (Exhibit lF).

Tr. 15 ¶ 5.

Additional evidence supporting the ALJ's determination that plaintiff's depression did not prevent her from doing light work is the consultative evaluation of plaintiff by Anthony G. Carraway, M.D. on 21 September 2010. Tr. 367-71. As summarized by the ALJ, Dr. Carraway (whose name was misspelled "Garraway" in most of the decision) found as follows:

> Dr. [C]arraway consultatively evaluated the claimant on September 21, 2010, and diagnosed the claimant with anxiety/depressive disorders. However, Dr. [C]arraway did not observe any signs of neurovegetative major depression symptoms. In addition, the claimant did not complain of psychotic symptoms or mania. Furthermore, the claimant exhibited normal speech/communication skills, intact concentration/attention and intact memory function; which is inconsistent with the claimant's allegations of memory function problems. Dr. [C]arraway did not detect any signs of thought disorder, delusions or perceptual disturbances. Dr. [C]arraway's examination findings evidenced that the claimant was mentally stable and able to function, even with her depression/anxiety. Moreover, the claimant denied experiencing suicidal or homicidal thoughts, which contradicts the claimant's testimony to the contrary. Dr. [C]arraway opined that the claimant possessed a GAF of 58-63, which indicated only mild to moderate symptoms. Dr. [C]arraway opined that the claimant was merely mildly impaired in her ability to remember, to understand/retain/perform instructions and to sustain attention. Dr. [C]arraway further concluded that the claimant had no limitations in her ability to perform simple repetitive tasks. Of note, the claimant reported that she had friends; which indicated that the claimant was capable of social interaction.

Tr. 16-17 ¶ 5.

---

80–71 If symptoms are present they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning.

70–61 Some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.

60–51 Moderate symptoms OR moderate difficulty in social, occupational, or school functioning in social, occupational, or school functioning.

50–41 Serious symptoms OR any serious impairment in social, occupational, or school functioning.

DSM–IV–TR 34.

The ALJ noted that Dr. Carraway's medical opinions support his determination that plaintiff could perform SRRTs. Tr. 17 ¶ 5. He gave them substantial weight on the ground that they were consistent with the bulk of the medical evidence. Tr. 17 ¶ 5.

Further, again as noted by the ALJ, mental status evaluations in the longitudinal records for plaintiff at primary care provider Halifax Medical Specialists, P.A. ("Halifax"), where plaintiff was treated from 1 February 2007 to 26 January 2010 (Tr. 304-54), were unremarkable. Tr. 16 ¶ 5; *see also* Tr., *e.g.*, 315, 330. The ALJ also observed that a mental status evaluation of plaintiff on 7 December 2010 by Raymond M. Baule, M.D. of Atlantic Neurosurgery Consultants, PA ("Atlantic Neurosurgery") was unremarkable. Tr. 16 ¶ 5; *see also* 372 ("Psychiatric: Not Present- Anxiety and Depression"). In addition, the ALJ notes that plaintiff did not complain of depression during her consultative examination on 4 April 2010 by physician Maqsood Ahmed, M.D. Tr. 16 ¶ 5; *see also* 359 ("Psychiatry: No complaint of depression."). Further, the ALJ points out that "none of the claimant's physicians have reported that the claimant is disabled and/or unable to work." Tr. 17 ¶ 5. The mental assessments of plaintiff by a consulting psychologist and psychiatrist at the initial and reconsideration stages of review in March 2010 and October 2010 also support the ALJ's determination of plaintiff's ability to perform work on a regular and continuing basis. *See* Tr. 81, 84, 88, 93, 96 100, 110, 111, 114, 124, 125, 128.[5]

---

[5] Although the ALJ did not discuss them, his failure to do so was harmless error because these assessments largely track that of the ALJ and his decision makes clear the weight he accorded such opinions. *See Spurlock v. Astrue*, No. 3:12-cv-2062, 2013 WL 841474, at *20 (S.D. W. Va. 28 Jan. 2013) (mag. judge's proposed findings and recommendation) ("[A]n ALJ's failure to explicitly state the weight he gave to a particular medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated."), *adopted*, 2013 WL 841474 (6 Mar. 2013); *cf.* Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (2 July 1996) (recognizing ALJ's obligation to discuss opinions of state agency medical consultants). The one material difference is that the consultants found plaintiff limited to minimal social contact (Tr., *e.g.*, 81, 93, 111, 125), whereas the ALJ found plaintiff capable of frequent (though not constant) contact with the public (Tr. 14 ¶ 5). As noted, however, the ALJ made a specific finding that plaintiff was capable of social interaction. Tr. 17 ¶ 5.

In support of her contention that her depression prevents her from working on a regular and continuing basis, plaintiff cites to her statements to Dr. Mamedi at the 17 September 2009 visit that she is unable to work on occasion because of her mental and other impairments (Tr. 294) and similar statements to physician Gerardo M. Maradiaga, M.D. on her 19 May 2009 visit to Halifax (Tr. 350). This evidence, though, which the ALJ clearly appears to have considered, does not negate the existence of substantial evidence supporting the ALJ's determination or otherwise dictate the conclusion plaintiff advocates. Indeed, the very job of the ALJ is to weigh such conflicting evidence.

Plaintiff also argues that the ALJ erred in stating that Dr. Mamedi's determination that her "depression was only moderate in severity . . . is not sufficient to support a finding of disability." Tr. 15 ¶ 5. As plaintiff herself acknowledges (*see* Pl.'s Mem. 9), a finding of moderate, as opposed to marked,[6] impairment is insufficient to establish disability under the so-called "paragraph B criteria" for purposes of the listings. *See* Tr. 13 ¶ 4; 20 C.F.R. §§ 404.1520a, 416.920a; Listings 12.00C, 12.04B, 12.06B. In any event, however, the ALJ's thorough review of the evidence shows that he did not rely on this observation as the basis for his determination that plaintiff could perform light work despite her depression.

Plaintiff also contends that her ability to work on a regular and continuing basis is compromised by her inability to afford treatment on a consistent basis. She cites to the statement by Dr. Ahmed in his consultative evaluation of plaintiff that her "prognosis for gainful employment is fair with pain management and psychological intervention." Tr. 360. But this statement by Dr. Ahmed does not expressly address any inability by plaintiff to pay, nor does

---

[6] A marked limitation "means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." Listing 12.00C.

any other portion of his evaluation. Indeed, Dr. Ahmed's report indicates that plaintiff was on five medications at the time he saw her. Tr. 357.

Moreover, she told Dr. Carraway that she had Medicaid insurance. Tr. 368. In addition, she testified that she stopped seeing Dr. Mamedi, at least in part, because he charged her $25.00 for each missed appointment. Tr. 34. The record does not otherwise show that the ALJ erred in not finding plaintiff unable to afford mental health, or other, care.

### 2. Plaintiff's Hypertension

Plaintiff argues that hypertension prevents her from working on a regular and continuing basis by causing her headaches. Substantial evidence, though, supports the ALJ's determination that plaintiff's hypertension did not prevent her from working on a regular and continuing basis.

Such evidence includes the finding by consulting physician Dr. Ahmed, cited by the ALJ, that plaintiff's hypertension was under control with medication. Tr. 16 ¶ 5; *see also* Tr. 358, 360; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). Further, in the note of a visit with plaintiff on 13 August 2008, Dr. Maradiaga of Halifax stated that plaintiff had quit smoking and her blood pressure had been within the acceptable range since her last visit. Tr. 335. Although plaintiff cites to a high blood pressure reading reported for her by treating physician Jaya S. Bajaj, M.D. on her one visit with him on 17 June 2010, Dr. Bajaj noted that she was out of compliance at the time with one or more of her blood pressure medications. Tr. 362.

Moreover, plaintiff cites no evidence for the contention that plaintiff's hypertension caused her headaches. Notably, she denied any headache at her visit with Dr. Bajaj, when her blood pressure was high. Tr. 362 ("Denies: . . . Headache."). While the ALJ found plaintiff's hypertension to be a severe impairment—signifying that it has more than a minimal effect on

11

Case 4:12-cv-00239-FL   Document 32   Filed 01/16/14   Page 11 of 18

her ability to perform basic work activities, *see* 20 C.F.R. §§ 404.1520(c), 416.920(c); *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984)—plaintiff has not demonstrated that the ALJ erred in finding that it would not preclude her from performing work activities on a regular and continuing basis.

### 3. Plaintiff's Herniated Cervical Discs

A magnetic resonance imaging ("MRI") scan of plaintiff's cervical spine on 14 September 2010 revealed herniations in two discs with resultant spinal cord deformation. Tr. 12-13 ¶ 3; 373. Plaintiff contends that this test "provides the basis for all of [plaintiff's] pain complaints" and that such pain is another reason why she cannot perform work on a regular and continuing basis. (Pl.'s Mem. 9).

Again, though, substantial evidence supports the ALJ's determination to the contrary. It includes the report of Dr. Baule of Atlantic Neurosurgery on his 7 December 2010 visit with plaintiff. Tr. 372-74. The ALJ summarized that report as follows:

> Although an MRI scan of the claimant's cervical spine showed evidence of disc herniations in September of 2010, a physical examination of the claimant, at Atlantic Neurosurgery Consultants, revealed grossly intact sensatory functions, a normal gait/station/stance/stride and normal bulk/tone/strength in all muscle groups with no signs of acute distress. These objective physical findings clearly established that the claimant was physically stable and able to function, even with her back disorders.

Tr. 16 ¶ 5; *see also* Tr. 373.

Plaintiff was being treated medically for the symptoms she reported to Dr. Baule from the cervical spine impairment—pain in both forearms, and pain and tingling and numbness in both hands—but he recommended discectomy and fusion. Tr. 373. Thus, a treatment existed to address more effectively the symptoms plaintiff's cervical condition was causing her. *See Gross*, 785 F.2d at 1166. She testified that she, in fact, attempted to have the surgery two times, but

other matters prevented it from occurring.[7] Tr. 39-40. She stated that she still intended to have the surgery. Tr. 40.

Notably, this determination by Dr. Baule that plaintiff's cervical spine impairment merited surgery came less than nine months before the ALJ's decision. Thus, even if at that point this impairment were deemed disabling, it would not meet the 12-month duration requirement. 20 C.F.R. §§ 404.1509, 416.909.

Further support is found in the 4 April 2010 findings of Dr. Ahmed, summarized in pertinent part by the ALJ as follows:

> [D]espite the claimant's allegations of hand pain, Dr. Ahmed did not detect any signs of hand muscle atrophy or bony arthritic hand changes. Furthermore, the claimant exhibited full ranges of extremity motions, full muscle strength and a normal gait with no indications of extremity edema or spinal deformities. Dr. Ahmed's evaluation findings established that the claimant was able to physically function despite her medical conditions. Moreover, Dr. Ahmed reported that the claimant was able to raise her arms overhead; to perform dexterous hand movements: to perform activities of daily living independently and to exercise mobility independently.

Tr. 16 ¶ 5; *see also* Tr. 356, 359, 360.

Plaintiff's argument that her cervical condition accounts for "all" of her pain finds scant support in the record. For example, numerous medical records show that she complained of and was treated for lower back pain. Tr., *e.g.*, 353, 357, 372. She also testified at the hearing about having lower back pain. Tr. 30-31.

---

[7] The ALJ did not formally identify plaintiff's cervical spine impairment as a severe impairment. Tr. 12 ¶ 3. But he did discuss it in his explanation of his severity finding, and his statements suggest that he did consider the cervical spine impairment to be severe. Tr. 12-13 ¶ 3. Even if the omission of the cervical condition from the list of severe impairments is deemed an error, it is harmless because the ALJ manifestly considered it at the subsequent steps of the sequential analysis, as the discussion above substantiates.

### 4. Combination of Impairments

Plaintiff argues that the combined effect of her impairments precludes her from working on a regular and continuing basis. She alleges that the ALJ failed to consider her impairments in combination "because they did not rise to the level of a Listing." (Pl.'s Mem. 10).

There is manifestly no merit to plaintiff's contention. The ALJ's decision makes clear that he did consider plaintiff's impairments in combination. Indeed, the RFC determination reflects the accommodation of both exertional and nonexertional impairments.

### 5. Conclusion

The court concludes that substantial evidence supports the ALJ's determination that plaintiff could perform work on a regular and continuing basis. The court further finds that the ALJ's RFC determination is otherwise supported by substantial evidence and based on the proper legal standards. The ALJ himself accurately summarized the evidence supporting his RFC determination as follows:

> In sum, the above residual functional capacity (RFC) assessment is supported by the opinion of Dr. Carraway, who also found that the claimant was able to perform simple repetitive work. The undersigned's finding regarding the claimant's RFC is also buttressed by the medical records/reports from Dr. Mamedi, Dr. Ahmed, Halifax Medical Specialist, Dr. [C]arraway and Atlantic Neurosurgery Consultants, which indicated that the claimant was physically and/or mentally stable and able to function. In addition, none of the claimant's physicians have reported that the claimant is disabled and/or unable to work.

Tr. 17 ¶ 5.[8] The court accordingly rejects plaintiff's first challenge to the ALJ's decision.

### D. ALJ's Credibility Assessment

Plaintiff alleges that the ALJ erred in his assessment of her credibility by requiring objective evidence of pain. *See Craig*, 76 F.3d at 592–93 ("[W]hile a claimant must show by

---

[8] Additional support for the ALJ's determination that plaintiff could perform light work is found in the same opinions reached by the consulting physicians at the initial and reconsideration stages of review. Tr. 86, 98, 112, 126.

objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'") (quoting *Green v. Schweiker*, 749 F.2d 1066, 1070–71 (3d Cir. 1984)). The court disagrees.

The ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); Soc. Sec. R. 96-7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. R. 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, after summarizing plaintiff's testimony, the ALJ made the finding at the first step of the credibility assessment that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 15 ¶ 5. At the second step of the assessment, the ALJ found that plaintiff's allegations were not fully credible. He stated that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these

15

symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment."

Tr. 15 ¶ 5.

The ALJ also provided specific reasons for his credibility determination grounded in the evidence of record. He began by stating:

> The claimant complained of limitations in lifting, gripping and performing physical activities caused by lower back/neck pain, left arm discomfort/tingling/numbness, diabetes, depression, past suicidal/homicidal thoughts, confusion, left hand carpal tunnel syndrome, paranoia and hallucinations. However, the medical evidence established that the claimant was able to mentally and physically function, even with her impairments.

Tr. 15 ¶ 5.

The ALJ then presented a detailed review and analysis of the medical evidence. It included Dr. Bajaj's notes on his one visit with plaintiff:

> Jaya Bajaj, M.D., examined the claimant on June 17, 2010 and assessed the claimant with HTN [*i.e.*, hypertension] and depression. However, Dr. Bajaj noted that the claimant was "doing well" and that the claimant had no complaints. This indicated that the claimant's impairments were improving with treatment. In addition, Dr. Bajaj observed that the claimant was not in any acute distress and that the claimant was alert (Exhibit 4F).

Tr. 16 ¶ 5; *see also* Tr. 362-65.

The ALJ's analysis also, of course, included the other medical evidence discussed above. Notably, the ALJ included among the evidence he relied upon Dr. Ahmed's finding that plaintiff was able "to perform activities of daily living independently." Tr. 16 ¶ 5. The ALJ had relied on this finding, as well, in making his determination that plaintiff had only mild restrictions in activities of daily living. Tr. 13 ¶ 4.

The ALJ therefore properly carried out the required two-step analysis of plaintiff's credibility. The ALJ's thorough review and analysis of the evidence of record belies plaintiff's contention that the ALJ improperly required objective evidence of pain.

Moreover, the ALJ's focus on the consistency between the level of pain claimed and the objective findings was entirely proper. "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Craig*, 76 F.3d at 595 (emphasis added). The court accordingly rejects plaintiff's challenge to the ALJ's credibility determination.

### E.     ALJ's Hypothetical to the VE

Plaintiff argues that the ALJ's hypothetical to the VE failed to take into account her purportedly limited ability to work on a regular and continuing basis. The contention has no merit.

A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). The hypothetical the ALJ posed here meets this standard. It provided as follows:

> Please assume a hypothetical individual with the same age, education, and same previous work history as the claimant, and also assume that this person occasionally lifts 20 pounds, frequently lifts 10 pounds, and can stand and walk six hours each in an eight-hour workday. Who is restricted to simple routine, repetitive tasks, in a low-stress environment, with frequent but not constant [contact with the public].[9]

Tr. 45. As required, this hypothetical essentially restates the ALJ's RFC determination. Substantial evidence supports that determination, including specifically the ALJ's finding that

---

[9] According to the transcript, the portion of this sentence after "constant" was inaudible. The bracketed language shown is consistent with the RFC, and neither party contends that this limitation was omitted from the hypothetical. The transcription of the hearing was, indeed, of poor quality, but did not preclude judicial review of the ALJ's decision.

Case 4:12-cv-00239-FL   Document 32   Filed 01/16/14   Page 17 of 18

plaintiff had the ability to work on a regular and continuing basis, as previously discussed. The court accordingly rejects plaintiff's challenge to the ALJ's hypothetical to the VE.

### III. CONCLUSION

After careful consideration of the ALJ's decision, the court concludes that it is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 29) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 28) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 30 January 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 16th day of January 2014.

_____
James E. Gates
United States Magistrate Judge